PEYTON MITCHELL *v.* THE STATE.

1. CONTINUANCE.—Being indicted for murder, accused moved for a continuance on account of the absence of two witnesses by whom he expected to prove that in the night preceding the homicide they saw the accused at "a great distance" from the scene of the killing, and in such a state of drunkenness as to disable him from walking without help, and thus physically incapacitated to such a degree as to render it improbable, if not impossible, that he could have committed the deed; and, further, that two escaped convicts were in the neighborhood of the homicide, just prior to

its perpetration, and for some time previous, but were never seen there subsequent thereto. *Held,* that these allegations were too indefinite. The place and distance should have been stated with such certainty as would have enabled the court to judge of their materiality; and the allegations respecting the escaped convicts were too vague to have any significance.

2. SAME.—The application further stated that the testimony taken before the examining court was not in court, and that neither accused nor his counsel had had an opportunity to examine it. *Held,* insufficient; reason why the testimony was necessary to the accused should have been shown; as, for example, to supply the testimony of a deceased witness, by authority of the act of 1866. Gen. Laws of 1866, p. 160.

3. MURDER.—Though an indictment charged that the killing was with express malice aforethought, a conviction under it will not be disturbed because the proof showed, not only such malice, but also that the killing was done in the perpetration of burglary or robbery.

APPEAL from the District Court of Brazoria. Tried below before the Hon. A. P. McCORMICK.

The deceased, James Hammer, was a clerk in the store of Lang & Julif, in Brazoria county. Early on Monday morning, the —— day of September, 1875, he was found dead some fifty yards from the store-house, in which he had his bed, and of which he kept the key. The door of the store was unlocked and opened, and quite a number of articles had been taken from it.

A physician, who examined the corpse early in the morning it was found, testified that the neck was dislocated and bore evidence of strangulation by violence, and that deceased must have been dead from six to eight hours.

The appellant and his co-defendant, the night previous, exhibited to sundry persons in the neighborhood the numerous articles which had been taken from the store, and which were fully and clearly identified by the witnesses for the state. The accused told one of the witnesses that he had bought the articles from the store of Mr. Thurman, also in the neighborhood; but that gentleman proved that he had not sold the articles, and had not any such articles in his

store. No countervailing evidence was adduced by the accused. It is fairly to be inferred that the deceased was induced to open the door of the store, and was killed either while endeavoring to escape to Mr. Julif's residence, distant about 150 yards, or else in the storehouse, and from thence carried to the spot where his body was found.

*Stratton & Wilson*, for the appellant. Under the indictment in this case the appellant could not certainly know that he would be required to answer for the murder of James Hammer, done in the perpetration of robbery. Homicide, under the laws of Texas, is of several grades, to wit: Murder of the first and second degrees; manslaughter; negligent, excusable, and justifiable homicide. Arts. 2267, 2250, 2235, 2233, 2208, Pasc. Dig. And, under Article 2267, murder of the first degree is also divided into three separate and distinct kinds, viz.: 1st. Murder by "poison, starving, or torture." 2d. Murder with "express malice," the evidences of the existence of which are "lying in wait," "antecedent menaces," "former grudges," "concerted schemes to do some bodily harm," "formed design," and the like. 3d. Murder done "in the perpetration, or in the attempt to perpetrate, arson, rape, robbery, or burglary." This distinct statutory classification of murder of the first degree into three several species, although the punishment is the same for either, was clearly intended to make of the three species independent and distinct offenses, and not that the three should be but elements one of the other, or but ingredients of one and the same offense. This view is in harmony with the construction given to Article 765 of the Criminal Code, which is Article 2409, Paschal's Digest. See *Banks* v. *The State*, 28 Texas, 648; *Jordt* v. *The State*, 31 Texas, 571. Articles 2409 and 2267 are analogous statutes in the principle of

construction, though different in the nature of the offense created and in the degree of the punishment prescribed. They both group several specific crimes, and, in either, like punishment is provided for all the offenses therein mentioned. Article 2409 is as follows, to wit: "If any person shall steal any horse, gelding, mare, colt, ass, or mule, his punishment shall be confinement in the penitentiary not less than five nor more than fifteen years."

The *Banks case*, 28 Texas, 648, holds that an indictment for the theft of a horse is not sustained by the proof of the theft of a mare. Horse being the genus, mare, gelding, colt, ass, and mule being the species, Judge Smith, in rendering the opinion of the court in the above case, uses this language, to wit: "It is our duty to give to this Article such construction as will give effect and meaning to *each word* as nearly as can be consistently done with the object and purpose of the legislature. The statute itself, in creating and providing for the punishment of the offense, appears to fix its own meaning to the words used. It specifically describes the different species of property by the use of the words 'horse, gelding, mare, colt, ass, or mule,' evidently discriminating between them as different species of property, and as much between horse and mare as between horse and ass or mule. The averments in the indictment must be equally specific, and the proof must correspond with the averments." This construction of similar statutes, says the learned judge, has been adopted both in England and in the United States. He refers to the following authorities: Whart. Am. Cr. Law; Roscoe on Cr. Ev.; 2 East P. C. 616; Leach, 123; 1 Moo. C. C., 24; Archb. Pl. & Pr. 399 and notes; 2 Russell on Cr. 133; *Hooker* v. *The State*, 4 Ohio, 349; *Turley* v. *The State*, 3 Hemp. 324. The same rule obtained in the case of *Jordt* v. *The State*, 31 Texas, 571, wherein the theft of a horse was charged, and the proof was that a gelding was stolen. It, therefore, seems

that in principle the construction of Articles 2409 and 2267 should be similar, and that the rule of procedure in the one should be that which obtains and is held to be the law in the other.

Neither can it be successfully held that murder committed in the perpetration, or in the attempt to perpetrate, robbery or burglary, is but an element of "express malice," and not a separate species of murder of the first degree distinct from murder commonly known as with "express malice," because killing under such circumstances is done at the moment when the murderer is caught in the attempt or in the act of robbing, or when escaping, and not upon a "formed design" against, or malicious intent towards, the person slain. The malice in these cases is not malice of fact, but only malice presumed by law. Such killing, except for the arbitrary force of statute, would not be murder of the first degree, but *at most* only murder of the second degree — the distinguishing feature of murder of the second degree being malice implied or presumed by law, and not "express malice." Whart. on Hom. 355.

The classification of murder by the statute was evidently made that the allegations of the indictment should correspond with the circumstances under which the murder might be committed, thus keeping in harmony with the general rule of law which requires that a person be not compelled to answer a criminal charge unless it is so certain that he may know for what offense he has to answer. The averments should be so specific as to bar a subsequent prosecution for the same offense. There is a further apparent unlikeness between murder with "express malice" and murder done in the act of robbery or burglary in this, that the robber takes life, not so much from malice or enmity against the deceased, as to prevent disclosures, and thereby shield himself from punishment consequent upon discovery. This motive flows from the law of self-preservation, and not

from any malicious intent.    Except for the force of statute such killing would be nearer of kin to manslaughter, as defined by the Criminal Code, than to murder of the first degree, with "express malice" (Art. 2250, Pasc. Dig.), in this, that a homicide committed in robbery or burglary is done under the influence of "sudden passion," and that "sudden passion" springs from the provocation which arises at the very time of the homicide.    There is also present the adequate cause, self-preservation—producing such degree of "anger, rage, resentment, or terror" as to cloud the mind and disturb the coolness of its reflection.    Arts. 2250, 2251, 2252.

Murder committed in the perpetration of robbery or burglary cannot be the same crime as murder with "express malice."    It is a distinct offense.    Deliberation, reflection, coolness, plan, and calculation, the necessary ingredients of "express malice," are neither present nor can they exist, because the act is born of impulse, and is but the work of a moment.    Every independent cause must produce its own effect.    Sweet and bitter water cannot flow at one and the same time from the same fountain.    The statute cannot take away the inherent elements of an offense, nor change its distinctive characteristics.    Article 2267 does nothing of the kind.    It only prescribes the same punishment for each of the several specific murders described, just as does Article 2409 for the specific offenses therein named.    Hence we conclude that an indictment under either article must be for the specific offense, and that the proof must correspond with the allegations, or the conviction is contrary to law and cannot stand.

The 4th assignment is that the court erred in refusing appellant a new trial.    This was, on the part of the state, a case entirely of circumstantial evidence.    "The defendant is entitled to every fact, however feeble, and although there may have been no seeming error in overruling the motion

for a continuance, yet, if the whole testimony showed that the absent witnesses were material, the overruling the motion for a continuance will be good ground for a new trial. *Cooper* v. *The State*, 19 Texas, 449. That the absent witnesses were material, none can doubt. By them it was expected to establish the fact that the appellant was, during the night of the homicide, and at a time of said night prior to its commission, a great distance from the place where it occurred, in such a drunken condition that it was improbable, if not impracticable, for him to have done the deed. Hence he could know nothing of the murder, nor have aided or counseled in the fatal work. It was also expected to have been shown by said witnesses that, at the time of the killing and for a number of days before that time, there were in the neighborhood two escaped convicts, who left immediately thereafter. They were persons likely to try any venture, however hazardous, however dark or bloody, to get means to make good their escape. They were under the ban of the law, not shielded by any presumption of innocence. The disappearance of these convicts, occurring at or about the time of the homicide, was a circumstance which pointed with as much certainty to them as the guilty perpetrators of this double crime of murder and robbery as did any circumstance proved against the appellant indicate that he was a party to the fatal deed. Still, both the continuance and a new trial were refused. Another of the grounds for a new trial was that the verdict was contrary to the evidence. See the case of *Elizabeth* v. *The State*, 27 Texas, and compare the evidence in that case with the testimony in this. In that case, as in this, the evidence did not support the verdict.

*Ganse & Thompson*, also for the appellant.

*H. H. Boone*, Attorney General, for the State.

WHITE, J.   One Job Jackson and the appellant in the case were jointly indicted in the district court of Brazoria county, charged with having murdered one James Hammer on the 5th day of September, 1875.   The indictment was presented at the October term, 1875, and is in the ordinary form of indictments for murder.

On the 12th day of October, 1875, when the case was regularly reached for trial, the parties defendant asked for a severance, and Peyton Mitchell, the appellant, was placed upon trial.   His application for a continuance, which was overruled by the court, was made on the 11th of October. He saved a bill of exceptions, and this is also one of the grounds of error complained of.

It was alleged in the application that the two witnesses whose testimony was desired would prove that, during the night prior to the time when the murder was said to have been committed, they (the witnesses) " saw defendant a great distance from the place where the murder was committed, and that defendant was in such a state of drunkenness as to be wholly unable to stand or walk without assistance, and was physically incapacitated to such an extent as to render it improbable, if not impossible, that he could have committed the deed."   He also expected to prove by the same witnesses the presence of two escaped convicts in the immediate neighborhood of the homicide, just prior to its commission, and for some time previous thereto, and that said convicts were never seen or heard of in the neighborhood after the killing.

Another ground for the continuance was that the testimony, as taken before the justice who acted as an examining court in this case, was not in court, and that neither defendant nor his counsel had had an opportunity to examine it.

The transcript shows that the subpœnas for defendant's witnesses were issued and placed in the hands of the sheriff the day after the indictment was filed in court, and that on

the very day before trial—to wit, the 11th of October—the witnesses were duly summoned ; and yet the defendant does not mention that fact in his application, nor does he say anything as to what became of the process, nor is there anything to show that the witnesses were absent the day after the application was overruled—to wit, the 12th day of October—when the case was called and the party put upon his trial.

We do not think the court erred in overruling the application because it was too indefinite.    The place where, and the distance at which, the two witnesses saw the defendant in such drunken condition should have been stated, so as to enable the court to judge as to whether or not the distance was a "great distance." *Winkfield* v. *The State*, 41 Texas, 148.

The same thing may be said of the proposed proof relative to "the two escaped convicts ;" the allegations were not sufficiently specific in showing the facts and their materiality.    We think the same objections are good, as against the other ground of the application, in regard to the testimony taken before the examining court.    Some reason should have been stated as to why it was necessary that defendant and his counsel should have had this testimony ; as, for instance (if such were the fact), that one of the witnesses had since died, and that the party desired to use the testimony as provided for in the act approved 10th November, 1866.    Gen. Laws, 160.

A critical examination of the certified copy of the indictment, sent up to correct the record, will show that it is not obnoxious to the objections urged in the motion in arrest of judgment, and, therefore, the court did not err in overruling said motion.

The only other point necessary to be noticed is the one presented, both in the motion to strike out the testimony, and in the bill of exceptions and the motion for a new trial. To state the question succinctly, it is urged that, because

the testimony shows that the murder was committed in the perpetration of, or an attempt to prepetrate, burglary or robbery, therefore the conviction was not warranted—the indictment being an ordinary indictment for murder, charging it to have been done solely with express malice aforethought.

Even if the evidence positively established the fact that the murder was committed in the perpetration of, or attempt to perpetrate, robbery or burglary—which the evidence objected to in this case did not—still we do not see why it would be inconsistent to show that it was also done with express malice aforethought, and, in either case, why a conviction could not properly be had. If the pleader had alleged that the crime was committed in the perpetration of, or attempt to perpetrate, burglary or robbery, then he would be held to prove the fact alleged. But where, as in this case, he alleges it to have been done upon express malice aforethought, there would be no incongruity that we can perceive in his showing that fact, and also the additional fact of burglary or robbery. The charge of the court, which was a clear and forcible exposition of the law applicable to the case, submitted the question of malice aforethought to the jury, and contained no instructions relative to the perpetration of, or the attempt to perpetrate, burglary or robbery. No additional charges were asked by defendant's counsel.

We deem it, therefore, unnecessary to discuss the principles and rules of law applicable to murder in connection with the facts presented.

So far as the facts are concerned, inasmuch as another party is still awaiting his trial for the same offense, we deem it inexpedient to comment upon them. Suffice it to say, from the evidence set out in the record before us the jury were not unwarranted in finding this defendant guilty of the most inhuman and atrocious murder of a small and delicate

boy, about fourteen or fifteen years of age, by choking him
to death, and, under the evidence, we cannot say that the
jury have inflicted too severe a punishment by leaving him
subject to the death penalty under the law.

Believing that defendant had a fair and impartial trial,
and that no error has been committed in the court below
for which the judgment should be reversed, the judgment
is in all things affirmed.

*Affirmed.*